## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ANTONIO L. BUCKMAN,

               Plaintiff,

v.                                    Case No. 3:18-cv-435-J-32MCR

SGT. DANNY HALSEY,

               Defendant.

_____

## ORDER

### I.    Status

Plaintiff, an inmate of the Florida penal system, is proceeding on a pro se Civil Rights Complaint (Doc. 1) against Sergeant Danny Halsey. Plaintiff claims that Defendant failed to protect him from another inmate. Before the Court is Defendant's Motion for Summary Judgment (Doc. 29), which is opposed by Plaintiff (Doc. 39).

### II.    Plaintiff's Complaint

Plaintiff alleges that on April 21, 2017, between 6:30 p.m. and 7:00 p.m., while housed at Florida State Prison as a close management inmate, Defendant overheard Plaintiff and inmate Ash engaging in a verbal altercation and threatening to harm each other. Defendant advised Plaintiff and Ash to cease their behavior or they would not be allowed to attend dayroom. Around 8:05

p.m., Defendant and another officer began removing inmates from their cells to attend dayroom. When Defendant reached Plaintiff's cell, he conducted a strip search of Plaintiff and informed him that he and Ash needed to "settle [their] beef." Plaintiff informed Defendant that Ash "had a possession of weapon disciplinary report pending and could not attend the dayroom." Defendant advised Plaintiff that he was aware of the DR, but he would still allow Ash to attend dayroom. Once Plaintiff was fully restrained ("handcuffs, black box, waist chain and leg irons"), he was placed in the third-floor shower. Defendant then went to Ash's cell, conducted a strip-search of Ash, fully restrained Ash, and placed him in the third-floor shower separate from Plaintiff. Defendant and the other officer proceeded to pull other inmates from their cells.

When Defendant and the other officer returned to the third-floor shower, Plaintiff advised Defendant that Ash had slipped his waist chain in front of him. Defendant told Plaintiff that he did not care "because he was tired of all the verbal altercations between Plaintiff and inmate Ash." He again told Plaintiff that he and Ash "had to settle [their] beef one way or the other." As Plaintiff was being escorted to the dayroom, Ash made threatening comments toward Plaintiff, which Defendant overheard. Specifically, Ash told Plaintiff he was going to bash his head in and "choke Plaintiff with the waist chain once they were in the dayroom, so Plaintiff better not sit down."

2

Plaintiff entered the dayroom, and subsequently observed Ash enter the dayroom. That "is when Plaintiff became aware that [Defendant] wanted Ash to seriously harm Plaintiff," and "when fear overcame Plaintiff of his life and safety[,] so Plaintiff walked towards Inmate Ash [and] that's when Plaintiff and Ash went at it."[1] The fight lasted 2-3 minutes, while Defendant "stood by and watched without intervening until later with chemical agents after he saw that Plaintiff was injured." As a result of the incident, Plaintiff suffered constant painful headaches; multiple lacerations and abrasions to his head, face, and left arm; and psychological trauma. He requests declaratory relief, as well as compensatory and punitive damages.

## III.   Summary Judgment Standard of Review

"'Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1300 (11th Cir. 2016) (quoting Jurich v. Compass Marine, Inc., 764 F.3d 1302, 1304 (11th Cir. 2014)); see Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Bowen v. Manheim Remarketing, Inc., 882 F.3d 1358, 1362

---

[1] In his formal grievance attached to the Complaint, Plaintiff stated: "In order to protect myself from being killed[,] I had to take off on Ash first before he could really do damage upon my well being."

3

(11th Cir. 2018) (quotations and citation omitted); see Hornsby-Culpepper v. Ware, 906 F.3d 1302, 1311 (11th Cir. 2018) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." (quotations and citation omitted)). In considering a summary judgment motion, the Court views "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party." Hornsby-Culpepper, 906 F.3d at 1311 (quotations and citation omitted).

"[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote and citation omitted); see Winborn v. Supreme Beverage Co. Inc., 572 F. App'x 672, 674 (11th Cir. 2014) (per curiam) ("If the movant satisfies the burden of production showing that there is no genuine issue of fact, 'the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor.'" (quoting Shiver v. Chertoff, 549 F.3d 1342, 1343 (11th Cir. 2008)). "'A mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.'" Loren v. Sasser, 309 F.3d 1296, 1302 (11th Cir. 2002) (quoting Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (internal quotations omitted)).

## IV.   Parties' Positions

Defendant argues that Plaintiff failed to exhaust his administrative remedies, failed to prove a constitutional violation, and is not entitled to compensatory or punitive damages. In support of his position, Defendant filed Plaintiff's medical records from the date at issue, fixed wing video footage (filed under seal), and a copy of a grievance approval action form.

The videos submitted contain several camera views. The M-Wing Dayroom video shows Plaintiff enter the dayroom around 8:23:57 p.m. Plaintiff, who is restrained in handcuffs, waist chain, and ankle chains (unsecured), walks into the dayroom, while looking behind him—apparently at Ash, who is walking in immediately behind Plaintiff.[2] Ash is also restrained in handcuffs and ankle chains; however, his waist chain is not around his waist but in front of him. Within seconds of Plaintiff and Ash entering the dayroom, Plaintiff turns and runs at Ash.[3] About 24 seconds into the scuffle, Defendant administers chemical agents on the two inmates in an attempt to break up the fight.[4] The entire altercation lasted about 31 seconds.[5]

---

[2] See M-Wing Dayroom video at 8:24:00 p.m.

[3] See M-Wing Dayroom video at 8:24:01 p.m.

[4] See M-Wing Dayroom video at 8:24:25 p.m.

[5] See M-Wing Dayroom video at 8:24:32 p.m.

The M-Wing Hallway camera shows three correctional employees, one being Defendant, walk Plaintiff and Ash down the hallway and the two inmates enter the dayroom. Defendant and one officer turn and begin walking away from the dayroom, while the third officer stays at the door. This camera view, along with the M-Wing Quarter Deck Right camera view, show Defendant turning around and running back toward the dayroom when he heard an incident was occurring.[6]

Plaintiff counters Defendant's arguments, and in support, submitted his declaration, an affidavit from another inmate regarding what Defendant allegedly told that inmate after the incident, and Defendant's answers to admissions and interrogatories.

## V.    Analysis

### a. Exhaustion

The Court previously denied Defendant's request for dismissal based on a failure to exhaust administrative remedies. See Order (Doc. 21). The Court has considered Defendant's exhaustion arguments made in his Summary Judgment Motion, but finds the Motion is due to be denied to the extent it seeks dismissal based on exhaustion.

---

[6] See M-Wing Hallway video and M-Wing Quarter Deck Right video at 8:24:05 p.m.

### b.  Eighth Amendment Claim

The Eighth Amendment imposes duties on prison officials to "'take reasonable measures to guarantee the safety of the inmates.'" Bowen v. Warden Baldwin State Prison, 826 F.3d 1312, 1319 (11th Cir. 2016) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). This includes protecting inmates from other inmates. Id. at 1320. "To survive summary judgment on a deliberate indifference failure-to-protect claim, a plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation." Mosley v. Zachery, 966 F.3d 1265, 1270 (11th Cir. 2020) (internal quotations and citation omitted).

> Deliberate indifference in the context of a failure to prevent harm has a subjective and an objective component, i.e., a plaintiff must show both "that the defendant actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm" and "that the defendant disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner." Caldwell, 748 F.3d at 1099[7] (alterations in original) (internal quotation marks omitted). Not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834, 114 S.Ct. 1970. Rather, a prison official violates the Eighth Amendment in this context only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." Caldwell, 748 F.3d at 1099 (emphasis omitted) (internal quotation marks omitted).

---

[7] Caldwell v. Warden, FCI Talladega, 748 F.3d 1090 (11th Cir. 2014).

7

Bowen v. Warden Baldwin State Prison, 826 F.3d 1312, 1320 (11th Cir. 2016).

Defendant argues that because Plaintiff was the initial aggressor and made no attempt to retreat, "he cannot establish the causation necessary to hold Sergeant Halsey liable for this claim," and thus, he "cannot prove a constitutional claim for failure to protect." Doc. 29 at 18. Defendant further argues that at most, Defendant's actions amount to negligence, because he could not have expected Plaintiff to attack Ash, and regardless, "Defendant took reasonable steps for the protection of Plaintiff by leaving another officer at the Dayroom with Plaintiff and Inmate Ash, by immediately running back to the Dayroom upon hearing that an incident was occurring, and by taking actions that quelled the incident within 17 seconds of his arrival back at the Dayroom door." Id. at 19.

To survive summary judgment, a plaintiff must produce sufficient evidence of causation, among other things. Mosley, 966 F.3d at 1270. "[S]ection 1983 'requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation.'" LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (quoting Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982)). In considering causation, § 1983 "focuses [a court's] inquiry on whether an official's acts or omissions were the cause—not merely a contributing factor—of the constitutionally infirm condition." Id.

> Under traditional tort principles, causation has two required elements: cause-in-fact and legal or proximate cause. A plaintiff must first show that the constitutional tort was a cause-in-fact of the injuries and damages claimed. To establish cause-in-fact, the plaintiff must show that except for the constitutional tort, such injuries and damages would not have occurred. Secondly, a plaintiff must show that the constitutional tort was the legal or proximate cause of the injuries and damages claimed. An act or omission is a legal or proximate cause of a plaintiff's injuries or damages if it appears from the evidence that the injury or damage was a reasonably foreseeable consequence of the act or omission.

Jackson v. Sauls, 206 F.3d 1156, 1168 n.16 (11th Cir. 2000) (citations omitted). "The causal relation does not exist when the continuum between Defendant's action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision-makers." Dixon v. Burke Cty., 303 F.3d 1271, 1275 (11th Cir. 2002). See Troupe v. Sarasota Cty., Fla., 419 F.3d 1160, 1165-66 (11th Cir. 2005) (affirming district court's conclusion on summary judgment that the defendants' actions did not proximately cause the plaintiffs' injuries due to an independent intervening cause).

Plaintiff argues that he turned and went toward Ash because as soon as Ash came through the doorway, Ash "lifted his hands from beneath his shirt with the waist chain and a sharp weapon in his hand and stated[,] 'I told you I'ma [sic] get you.'"[8] Doc. 39 at 17. "Upon seeing the threat[,] Plaintiff walked

---

[8] Plaintiff did not make this allegation in his Complaint.

towards I/m Ash and the two went at it." Id. Plaintiff also states that the use of force reports indicate that Ash was the aggressor, and Captain Starling stated that Ash was the aggressor on the use of force video. Id. However, these reports and video have not been filed with the Court. Basically, Plaintiff's argument is that he had to go towards Ash to avoid Ash coming at him first, and it was Defendant's deliberate indifference in placing the two in the dayroom together, knowing that Ash had his waist chain in front of him and that Ash had been previously threatening Plaintiff, that caused Plaintiff's injuries.

The pertinent facts are not disputed, and the video evidence accurately and clearly shows the incident in the dayroom. Plaintiff acknowledges that he and Ash were strip-searched, restrained to some extent,[9] and placed in the dayroom. The M-Wing Hallway camera shows that a correctional officer was at the dayroom door. Within seconds of being in the dayroom, Plaintiff attacked Ash. Immediately upon hearing the commotion, Defendant ran back to the dayroom to attempt to break up the fight, and his actions were successful in quelling the fight within about 31 seconds of its inception.

Defendant appears to suggest that when taking Plaintiff's allegations as true, he was aware "that Plaintiff was in danger of an attack by Inmate Ash,"

---

[9] The M-Wing Dayroom camera shows that Ash's waist chain was not around his waist but in front of him; his handcuffs and ankle chains were secured. It further shows that Plaintiff's ankle chains were not secured, but his handcuffs and waist chain were secured.

but "[n]o such attack ever occurred." Doc. 29 at 19.[10] Defendant did not submit a declaration in support of his Motion, and he argues, as a secondary argument to causation, that he acted reasonably and that he was—at most—negligent. Id. However, in the light most favorable to Plaintiff, given all that Defendant knew leading up to the fight, whether Defendant should have placed Plaintiff and Ash in the dayroom together or taken additional precautions, such as ensuring Ash's restraints were fully intact, may have been an issue of fact that precluded entry of summary judgment. And, if, in fact, Ash had attacked Plaintiff, that may have created a causation question for a jury. But given that Plaintiff chose to immediately attack Ash, rather than speak to the guard at the door or distance himself in any way from Ash,[11] Plaintiff effectively broke any causal connection between Defendant's actions and Plaintiff's injuries.

On these facts, as a matter of law, Plaintiff cannot prove a failure-to-protect claim against Defendant when Plaintiff was the one who physically advanced toward Ash. See Hankerson v. Santos, No. 3:12CV251/LC/CJK, 2014 WL 5364174, at *7 (N.D. Fla. Oct. 21, 2014) (finding that the prisoner-plaintiff

---

[10] The sentence in Defendant's Motion is incomplete: "As to the actions of Defendant, Defendant was, at most even if taking Plaintiff's allegations as true arguendo, that Plaintiff was in danger of an attack by Inmate Ash." Doc. 29 at 19. Given the context, it appears Defendant meant that, if Plaintiff's allegations are taken as true, Defendant was aware that Ash may attack Plaintiff.

[11] The Court recognizes that the dayroom does not appear to be very large, but has bench seating on three sides and five other inmates were present.

failed to establish the causation necessary to hold the correctional officer liable when the plaintiff attacked his roommate and had previously declined the officer's offer for protective custody); see also Clark v. Johnson, 181 F. App'x 606, 607 (7th Cir. 2006) ("[T]he risk to [the plaintiff] was of his own making, and prison officials cannot reasonably be required to protect an inmate who intentionally instigates a violent altercation with another prisoner."); Hailey v. Kaiser, 201 F.3d 447 (10th Cir. 1999) (table) (affirming district court's grant of summary judgment; finding no causation to hold the defendants liable for the plaintiff's injuries when the plaintiff was the aggressor in the altercation and admitted that he could have avoided the other inmate "but instead engaged him in an altercation"). But see Santiago v. Walls, 599 F.3d 749, 759 (7th Cir. 2010) (finding the district court erred in dismissing the prisoner's failure-to-protect claim at the pleading stage despite the fact that the plaintiff "threw the first punch when the inevitable altercation" took place).

While issues of proximate causation are generally left to a jury, the video evidence demonstrates that there are no genuine issues of material fact and no reasonable jury could find in Plaintiff's favor. Plaintiff was injured because he started a physical altercation with Ash. The alleged threatened harm—that Ash would attack Plaintiff—did not occur. Rather, Plaintiff's own actions caused his

injuries. Even construing the facts in the light most favorable to Plaintiff, Defendant is entitled to summary judgment.[12] Accordingly, it is

**ORDERED**:

1.      Defendant's Motion for Summary Judgment (Doc. 29) is **GRANTED**.

2.      The Clerk shall enter judgment in favor of Defendant and against Plaintiff, terminate any pending motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 26th day of August, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 8/25
c:
Antonio L. Buckman
Counsel of Record

---

[12] In light of the Court's findings, the Court need not address Defendant's argument that Plaintiff is not entitled to compensatory or punitive damages.

13